1 | ROBERT S. SPAN (SBN 68605)
rspan@steinbrecherspan.com
2 | DOUGLAS R. PAINTER (SBN 131043)
dpainter@steinbrecherspan.com
3 | STEINBRECHER & SPAN LLP
445 S. Figueroa St., Suite 2350
4 | Los Angeles, CA  90071
Telephone:   (213) 891-1400
5 | Facsimile:    (213) 891-1470

6 | MATTHEW A. LESNICK (SBN 177594)
matt@lesnickprince.com
7 | ANDREW R. CAHILL (SBN 233798)
acahill@lesnickprince.com
8 | LESNICK PRINCE & PAPPAS LLP
185 Pier Avenue, Suite 103
9 | Santa Monica, CA  90015
Telephone:   (310) 396-0964
10 | Facsimile:    (310) 396-0963

11 | Attorneys for Plaintiffs Krasimir Dachev, Peace for
You Peace for Me and Svilosa AD

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:17-bk-12434-VK |
| | Chapter 7 |
| ROBIN DIMAGGIO, | Adv. No. 1:17-ap-01099-VK |
| Debtor. | **PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| KRASIMIR DACHEV, PEACE FOR YOU PEACE FOR ME, and SVILOSA AD, | |
| Plaintiffs, | |
| vs. | **[Hearing to be Set by Court]** |
| ROBIN DIMAGGIO, | Place:   Courtroom 301 |
| Defendant. | 21041 Burbank Blvd. Woodland Hills, CA 91367 |

Pursuant to Local Bankruptcy Rule 7056-1(b)(2), Plaintiffs Krasimir Dachev, Peace For You Peace For Me, and Svilosa AD ("Plaintiffs") submit this Statement of Uncontroverted Facts and Conclusions of Law ("Statement") in support of Plaintiffs' Motion for Summary Judgment Or, In The Alternative, Partial Summary Judgment ("Motion"). The Statement sets forth all findings of fact and conclusions of law that the Court should make pursuant to Local Bankruptcy Rule 7052 in connection with granting the Motion and entry of summary judgment in favor of Plaintiffs and against Debtor Robin DiMaggio ("DiMaggio").

## STATEMENT OF UNCONTROVERTED FACTS

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
| **11 U.S.C. § 523** | | |
| 1. | Plaintiff Peace for You Peace for Me foundation (the "Foundation") is a non-profit organization registered under the laws of Bulgaria. Around December 2015, it began efforts to organize a charity benefit concert to provide financial aid to and awareness of homeless and displaced children in and from conflict zones worldwide. | Declaration of Jay Botev ("Botev Decl.") ¶¶ 2 & 3. |
| 2. | Plaintiff Krassimir Dachev ("Dachev"), an individual residing in Sofia, Bulgaria, decided around mid-2016 to assist the Foundation and, with his company Plaintiff Svilosa AD, worked with and financed the Foundation's efforts to organize an all-day charity concert in Sofia, Bulgaria (the | Botev Decl. ¶¶ 2 & 3. |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | "Charity Concert"). |  |
| 3. | Around late May 2016, debtor DiMaggio was introduced to the Foundation and claimed he was a well-known drummer to celebrity artists and the "Musical Director of the United Nations." He claimed he could, through the connections he claimed to have developed, procure commitments from numerous celebrity musicians to perform at the Charity Concert, then 16 weeks away. | Botev Decl. ¶ 4. |
| 4. | The Foundation researched DiMaggio and found articles and photographs related to the time he did some work for the United Nations and to his older touring and studio work with musical celebrities. The Foundation, which was not familiar with the music industry in the United States, believed that DiMaggio was legitimate and had no reason to suspect that he would steal its money. | Botev Decl. ¶ 4. |
| 5. | DiMaggio claimed that he would be working with the assistance of Bruce Sterling (who operated as a one-man | Botev Decl. ¶ 5. |

2

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | company called A.E.I. Entertainment). |  |
| 6. | DiMaggio gave the Foundation an "Artist Acquisitions Roster" listing over 150 music celebrities from which Plaintiffs could "pick" and an "Engagement Binder" between it and DiMaggio's one-man company, DiMaggio International Inc. ("DMI"). | Botev Decl. ¶¶ 5-6 and Ex. A. |
| 7. | In reliance on DiMaggio's representations, on June 6, 2016 the Foundation signed the binder, which provided, among other things, for payment of $50,000 to DMI and that all artist fees advanced by the Foundation would be returned if an artist was "not available" or did not agree to the final contract offer approved by the Foundation. | Botev Decl. ¶ 7 and Ex. B. |
| 8. | DiMaggio told Plaintiffs that he had received "verbal yes[es]" from Mick Jagger and Earth Wind & Fire to perform at the Charity Concert. He also wrote that, unless he was immediately paid the full binder amount, his "managers, business manager, production team and lawyers" would not let him make any "strategic moves," and that | Botev Decl. ¶¶ 8-9 and Exs. C, D & E. |

Case 1:17-ap-01099-VK    Doc 47    Filed 07/23/18    Entered 07/23/18 15:48:15    Desc
Main Document    Page 5 of 18

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | waiting any further to make the full payment would be "extremely dangerous." |  |
| 9. | In reliance on these statements, from June 21, 2016 to July 7, 2016, the Foundation wired to DMI's Citibank account a total of $41,000, with the remaining $9,000 paid in travel and cash expenses for the Debtor's trip to Sofia, Bulgaria. | Botev Decl. ¶ 10 and Ex. F. |
| 10. | On July 7, 2016, DiMaggio claimed to have secured additional confirmations from artists, but which also stated that, unless the Foundation sent even more money immediately, "all this is for nothing." DiMaggio requested a $150,000 payment to secure such artists, and sent an invoice to the Foundation, which stated that the money paid by the Foundation would be returned at its option if either artist was "not available" or did not agree to the Foundation's contract offer. The Foundation wired $150,000 to DMI's Citibank account. | Botev Decl. ¶¶ 11-13 and Exs. G, H & I. |
| 11. | The Foundation arranged for a press conference for the Charity concert to be held in early July 2016. After resulting press reports, DiMaggio sent an invoice to | Botev Decl. ¶¶ 12, 14 and Exs. I, J & K. |

4

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | the Foundation for $53,300 for "legal defamation PR, legal attorney fees and administrative services."  When questioned further about the invoice, DiMaggio changed the reason for his invoice and claimed the money was needed just to book acts.  He stated that he would resign if the money was not paid.  The Foundation wired the requested $53,300 to DiMaggio's corporate bank account. |  |
| 12. | DiMaggio sent the Foundation a contract dated August 1, 2016 from a purported entity called One Talent Agency (or "OTA") that supposedly required an immediate $750,000 payment (by August 3, or within 48 hours), to secure Jennifer Lopez, Roger Waters, Don Felder (from the Eagles), Christina Aguilera and John Legend. The Foundation asked for several amendments to the OTA contract, including a provision that the monies sent by the Foundation would be fully refundable if a final contract with any artist could not be agreed upon. | Declaration of Alexander Panev ("Panev Decl.") ¶¶ 5-9 and Exs. FF, JJ. |
| 13. | The Foundation asked for banking | Panev Decl. ¶ 10 and Ex. KK. |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|-----|---------------------|----------|
|     | information for the OTA and, in response, DiMaggio emailed the Foundation the following: ". . . if you send the money in their [OTA] accounts you are going to pay 33% taxes on top of what you are paying. I had told [Dachev] to continue paying into my corporation and I will then wire immediately into there [sic] account same day." |  |
| 14. | Instead of continuing with OTA, DiMaggio then sent the Foundation a new agreement between it and *DMI* that provided for the exact same payment ($750,000) to secure the exact same artists. | Panev Decl. ¶ 11 and Ex. LL. |
| 15. | The Foundation instructed DiMaggio to open an independent escrow to which it would send the requested $750,000 and from which all monies to artists could be tracked and accounted for. DiMaggio responded that there was "not enough time" to open such an escrow stated that he would do so by August 12, 2016. | Panev Decl. ¶ 13 and Exs. NN & OO. |
| 16. | In reliance on DiMaggio's written representations that he would open an escrow account, on August 5, 2016, the | Panev Decl. ¶ 14; Botev Decl. ¶ 16 and Ex. L. |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | Foundation wired $750,000 to DiMaggio's DMI bank account. |  |
| 17. | DiMaggio never opened the escrow account, and despite repeated requests from the Foundation, never signed the escrow agreement he promised. | Panev Decl. ¶¶ 13 & 15 and Ex. OO. |
| 18. | Within a week of receiving the $750,000 wire, DiMaggio emailed the Foundation and requested moving the concert from October 1, 2016 to December 1, 2016. | Panev Decl. ¶ 15 and Ex. PP. |
| 19. | On August 11 and 12, 2016, the Foundation demanded that DiMaggio sign and return the escrow agreement for the $750,000 that he had promised. DiMaggio did not comply. | Panev Decl. ¶ 15 and Ex. PP. |
| 20. | On August 16, 2016, the Foundation emailed DiMaggio and demanded that DiMaggio "wire all money back immediately." DiMaggio initially claimed that the Foundation's right to reimbursement could not occur until "everyone returns the deposits" but subsequently, on August 25, 2016, represented that he did not want to return any money at all so that he could instead | Panev Decl. ¶¶ 16-17 and Exs. QQ & RR. |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | use that money to secure artists for a 2017 concert. |  |
| 21. | On September 2, 2016, the Foundation made additional written demands for the return of its money. DiMaggio has refused those demands and all subsequent requests for the return of the Foundation's money and for an accounting. | Panev Decl. ¶ 18 and Ex. SS. |
| 22. | Representatives of the artists for which DiMaggio claimed to have invoiced Plaintiffs (Earth Wind & Fire and Mick Jagger) have stated that they do not know who DiMaggio is and never received money relating to the Charity Concert. | Decl. of Brett Steinberg ¶ 3; Decl. of Chris Andrews ¶ 5. |
| 23. | At deposition, DiMaggio testified that he has never personally booked any artist for any concert at any time, he never had discussions or negotiations with anyone concerning the booking of any artist for the Charity Concert, and he is unaware of any artist that was paid any money relating to the Charity Concert. | Tr. of Depo. of Robin DiMaggio dated May 1, 2018, excerpts at Painter Decl. Ex. TT ("TR") at 44:8-23, 127:11-130:2, 179:25-180:19, 206:23-207:3. |
| 24. | The records produced by DiMaggio's bank show that, after receiving each wire by Plaintiffs to his DMI account, he almost immediately transferred those funds to his | Declaration of Douglas R. Painter, Ex. DDD. |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | personal bank account. |  |
| 25. | Before his bankruptcy filing, DiMaggio was sued by Plaintiffs in state court. | Painter Decl. Ex. VV. |
| 26. | DiMaggio claimed that $600,000 of Plaintiffs' money was sent to Bruce Sterling and he produced a receipt for a $600,000 bank check made payable to Bruce Sterling's company, A.E.I.  The bank receipt was dated July 14, 2016, at which time Plaintiffs had only sent DiMaggio approximately $258,000.  The bank's records revealed that the corresponding check was only for $10,000. | Painter Decl. ¶¶ 6-7 and Exs. XX & YY; TR at 247:4-14. |
| 27. | DiMaggio produced bank records indicating that as of July 14, 2016, before he supposedly issued the $600,000 check, the account had a balance of $715,662.41 and that there was a $600,000 withdrawal. Records produced by the bank indicate that the balance actually was $662.41 (not $715,662.41) and do not evidence a withdrawal of $600,000 at that time. | Painter Decl. ¶¶ 8-9 and Exs. ZZ, AAA, BBB & CCC.] |
| 28. | Plaintiffs wired a total of $1,275,633 which DiMaggio has refused to return. | [Botev Decl. Exs. F, I, K, L, & N through BB.] |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
| **11 U.S.C. § 727** | | |
| 29. | On Schedule I, DiMaggio stated that his income at the time the petition was filed was $0.00. On his Statement of Financial Affairs ("SOFA"), DiMaggio claimed that he earned only $32,948.00 in the almost 3 years prior to the Petition Date, and $0.00 in "other income" from January 1, 2015 through the Petition Date. | Painter Decl. Ex. EEE at 23, 28-29. |
| 30. | On his SOFA, DiMaggio stated that, within the 2 years prior to the Petition Date, he did not sell any property outside the ordinary course of business. | Painter Decl. Ex. EEE at 32. |
| 31. | From 2015 through the Petition Date, DiMaggio made at least 159 separate deposits into his Citibank checking and savings accounts – totaling no less than $1,465,316.54. | |
| 32. | In 2015, DiMaggio applied for a pre-approved home mortgage loan; his loan application included a letter from DiMaggio to Citibank, dated March 30, 2015, that states: "I have already received $57,000.00 in royalties for this year and | Painter Decl. Ex. HHH. |

10

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | expect another check for roughly the same amount 4/13/15 …." Attached to the letter is a statement from ASCAP showing that, on January 5, 2015, DiMaggio received $56,626.86 from ASCAP as royalties for work he did for the *Arsenio Hall Show*. |  |
| 33. | On a loan application submitted to Barclays Bank dated January 8, 2015, DiMaggio stated that his annual income was $250,000. | Painter Decl. Ex. NNN at 2. |
| 34. | DiMaggio made payments to his credit card companies totaling at least $321,335.66 during that same time period. | Painter Decl. Ex. III (and supporting credit card statements at Exs. JJJ-MMM). |
| 35. | DiMaggio spent at least $10,000 on clothing and accessories at the John Varvatos stores in Malibu and Las Vegas, Barneys New York and the Louis Vuitton store in Australia, among other purchases. | Painter Decl. Ex. KKK at 2, 129 and 147; Ex. LLL at 18, 57, 180, 240 and 250. |
| 36. | Credit card records from 2015 to the Petition date show DiMaggio made trips to Taiwan and Macau in 2015, the Westin Hotel in Fiji and the Four Seasons Hotel in Australia in 2016, the Four Seasons hotel in Bora Bora and the Intercontinental Hotel in Tahiti in 2016, as well as trips to New | Painter Decl. Ex. GGG at 7; JJJ at 15, 47 and 50; Ex. KKK at 97, 106, 112, 127, 129 and 147; Ex. LLL at 4, 10, 41-42, 65-66, 140, 286-87, 369, 405 and 428. |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | York, Bulgaria, Arizona, Las Vegas, Montreal and San Francisco; the Four Seasons in Los Angeles and Westlake Village, the Hotel Indigo in Santa Barbara, the Sofitel Hotel in Los Angeles and the Anza Hotel in Calabasas. |  |
| 37. | Credit card receipts evidence DiMaggio's dining charges at Mr. Chow in Beverly Hills ($683.25 on Jan. 1, 2017), The Warehouse in Marina del Rey ($736.64 on Jan. 29, 2016, Rossini's in New York ($699 on Sept. 19, 2016, Vitello's in Studio City ($550 on Dec. 12, 2016), and Vibrato Grill in Los Angeles ($1,729.95 on Dec. 29, 2016 and $509.84 on Nov. 12, 2015). | Painter Decl. Ex. LLL at14, 22, 45, 53, 54, and 1173. |
| 38. | DiMaggio also spent many thousands of dollars on furniture, electronics and other items at places like Best Buy, T-Mobile, Urban Home, and Modern Digs. And, on August 17-21, 2017 – less than 1 month before he filed his bankruptcy petition – DiMaggio paid $30,100 to something called "Bang the Gavel Auction." | Painter Decl. Ex. JJJ at 23; Ex. KKK at 167; Ex. LLL at 12, 17, 121, 219, 221, 418, 450, 451 and 456. |
| 39. | DiMaggio admitted at deposition that he omitted on his SOFA income that he earned | TR at 302:16-305-9, 424:24-429:5. |

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | in Europe. DiMaggio estimated that he earned at least $7,000 in France in 2016. He could not remember 2015. |  |
| 40. | The only ownership interest in any company that DiMaggio listed on his schedules was a 100% ownership of DiMaggio International, Inc. DiMaggio did not list any ownership interest in Dimagic Entertainment, which he formed on July 29, 2016. On August 16, 2016, DiMaggio transferred $150,000 from his personal bank account into Dimagic's bank account. | Painter Decl. Ex. EEE at 6, 33,34, 137 and 280. |
| 41. | On August 20, 2016, DiMaggio wired $251,370 from his personal account to Santa Clarita Valley Escrow. He also provided an additional check for $1,000. The funds, which DiMaggio admitted came from Plaintiffs, were used to purchase a house located at 23777 Mulholland Hwy. #163, Calabasas, CA 91302 (the "Mulholland House"). | Painter Decl. Ex. PPP at 1, 3, 6 and 8; Ex. GGG at 139; and TR at 295:20-296:1, 319:2-5. |
| 42. | From at least November 2016 through 2017 and into 2018, DiMaggio wrote cashier's | Painter Decl. Exs. QQQ, RRR & SSS. |

13

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | checks on a roughly monthly basis, payable to the development in which the Mulholland House is located, totaling no less than $21,515. He also paid various utilities for the home as well as the property taxes for the home. |  |
| 43. | DiMaggio failed to disclose a large number of transfers to or for the benefit of his ex-wife Marti Rich and her son, as well as his own mother and son within 1 year before the Petition Date, including lot rental fees, property taxes and utilities for the Mulholland House, payments for cars, and numerous credit card charges for Marti Rich as described above. | Painter Decl. Exs. PPP-TTT; TR at 330:3-333:18. |
| 44. | DiMaggio failed to disclose that the year before the bankruptcy petition, DiMaggio paid a $1,400 credit card charge as a gift to a friend named Rachel Foty, as well as paying credit card purchases of his ex-wife Marti Rich. | TR at 351:20-352:14 and Painter Decl. Ex. LLL at 57, Ex. KKK and Ex. JJJ at 42. |
| 45. | DiMaggio stated that he did not sell any personal property the two years before the petition, but he sold about $20,000-$22,000 in recording equipment, and transferred | Painter Decl. at Ex. EEE at 32; TR at 274:16-275:5; 299; 306:18-30:8. |

14

| NO. | UNCONTROVERTED FACT | EVIDENCE |
|---|---|---|
|  | furniture and equipment to a friend in satisfaction of a debt. |  |
| 46. | DiMaggio failed to schedule that he was owed over $2,000 by a man named Mark Romans, to whom he had loaned money on May 1st and July 28th of 2017. | TR at 325:21-326:3; and Painter Decl. Ex. EEE at 4-8. |

## CONCLUSIONS OF LAW

1.  The Debtor should be denied discharge under § 727(a)(2) because he has concealed his property.

2.  The Debtor should be denied discharge under § 727(a)(3) because he has concealed and failed to maintain documents.

3.  The Debtor should be denied discharge under § 727(a)(4) because he knowingly made a false oath or account and withheld documents from the estate relating to the Debtor's financial affairs.

4.  The Debtor should be denied discharge under § 727(a)(5) because he failed to satisfactorily explain the deficiency in his assets.

5.  Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, the Debtor should be liable for a nondischargeable debt in the principal amount of $1,275,633 because it was obtained by false pretenses, false representation or actual fraud.

6.  Pursuant to Section 523(a)(4) of the Bankruptcy Code, the Debtor should be liable for a nondischargeable debt in the principal amount of $1,275,633 because it arises from the Debtor's embezzlement.

15

7. Pursuant to Section 523(a)(4) of the Bankruptcy Code, the Debtor should be liable for a nondischargeable debt in the principal amount of $1,275,633 because it was obtained by the Debtor's fraud and defalcation while acting in a fiduciary capacity.

8. Pursuant to Section 523(a)(6) of the Bankruptcy Code, the Debtor should be liable for a nondischargeable debt in the principal amount of $1,275,633 due to his causing a willful and malicious injury to Plaintiffs.

9. The equities of this case warrant an award of prejudgment interest in the amount of $168,069.01, which is calculated at 7% interest (*see* Civ. Code, § 3287) from September 2, 2016 (the date that Plaintiffs demanded return of their money) to the present.

10. Punitive damages are warranted in this case because of the Debtor's fraudulent and malicious conduct.

DATED: July 23, 2018

STEINBRECHER & SPAN LLP
- and -
LESNICK PRINCE & PAPPAS LLP

By: /s/ Matthew A. Lesnick
    Matthew A. Lesnick
    Attorneys for Plaintiffs Krasimir Dachev,
    Peace for You Peace for Me
    and Svilosa AD

16

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Lesnick Prince & Pappas LLP, 315 W. Ninth Street, Suite 705, Los Angeles, CA 90015

A true and correct copy of the foregoing document entitled (*specify*): **PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/23/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com; jmack@lesnickprince.com
- **David Seror (TR)**    mtzeng@brutzkusgubner.com, C133@ecfcbis.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 07/23/2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| **PERSONAL DELIVERY** | **PERSONAL DELIVERY** |
|---|---|
| Hon. Victoria S. Kaufman | Robin DiMaggio |
| United States Bankruptcy Court | 5737 Kanan Rd., #117 |
| 21041 Burbank Blvd., Suite 354 | Agoura Hills, Ca 91301 |
| Woodland Hills, CA 91367 | |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/23/2018 | Janet A. Mack | /s/Janet A. Mack |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**